**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| 760 NEW BRUNSWICK URBAN RENEWAL LIMITED LIABILITY COMPANY and DENOVO NEW BRUNSWICK LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>NAVIGATORS SPECIALTY INSURANCE COMPANY and JOHNSON CONTROLS BATTERY GROUP, INC.,<br><br>        Defendants. | Civil Action No. 20-5877 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge**:

Plaintiffs, 760 New Brunswick Urban Renewal Limited Liability Company ("Urban Renewal") and DeNovo New Brunswick LLC ("DeNovo") (collectively, "Plaintiffs"), brought this insurance coverage and breach of contract dispute against Defendants, Navigators Specialty Insurance Company ("Navigators") and Johnson Controls Battery Group, Inc. ("JCBGI") (collectively, "Defendants"), in connection with an environmental investigation and remediation at a property located in New Brunswick, New Jersey.

Presently before the Court are two separate Motions to Dismiss filed by Navigators and Clarios, LLC ("Clarios").[1] Navigators moves to dismiss Plaintiffs' claims for declaratory relief, breach of contract, and breach of the duty of good faith and fair dealing, for failure to state a claim; JCBGI moves to dismiss Plaintiffs' claims for injunctive relief, contribution pursuant to the New

---

[1] Clarios is the entity formerly known as JCBGI.  (Clarios's Moving Br. at 1.)  For the purposes of clarity, the Court will refer to Clarios and Johnson Controls Battery Group, Inc. as "JCBGI."

Jersey Spill Compensation and Control Act ("Spill Act"), N.J.S.A. 58:10-23.11, *et seq.*, common law negligence, strict liability, and breach of contract also for failure to state a claim.   For the reasons that follow, Navigators's motion is **GRANTED** in part and **DENIED** in part as follows: Navigators's motion is **GRANTED** with respect to Urban Renewal's breach of contract claim (Count II), Plaintiffs' breach of the implied covenant of good faith and fair dealing claim (Count III), and Plaintiffs' request for declaratory relief (Count I).   These claims are dismissed with prejudice.   However, Navigators's motion is **DENIED** as to DeNovo's breach of contract claim (Count II).   JCBGI's motion is **GRANTED** with respect to Plaintiffs' claims for injunctive relief (Count IV), contribution pursuant to the Spill Act (Count V), negligence (Count VI), breach of contract (Count VII), and strict liability (Count VIII).   Plaintiffs will be given leave to amend their Spill Act contribution, negligence, and strict liability claims within 30 days from the date of this Opinion.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For the purposes of these motions, the Court takes as true all allegations of the Complaint. According to Plaintiffs, prior to 2005, Delphi Automotive Systems, LLC ("Delphi") owned and operated a battery manufacturing facility located at 760 Jersey Avenue, New Brunswick, New Jersey (the "Property").   (Compl., ¶ 5.)   On May 26, 2006, Delphi allegedly entered into an agreement (the "Delphi Agreement") to sell the Property to Johnson Controls, Inc. ("Johnson Controls"), and the sale of the Property closed on August 1, 2006.   (*Id.* at ¶ 7.)   At the time of the Delphi Agreement, Delphi and certain affiliates were in a bankruptcy reorganization process under Chapter 11 of the U.S. Bankruptcy Code.   (*Id.* at ¶ 6.)   The sale of the Property purportedly triggered certain remediation requirements under the New Jersey Industrial Site Recovery Act, N.J.S.A. § 13:1K-6, *et seq.* ("ISRA"), including a comprehensive environmental investigation with respect to the Property.   (*Id.* at ¶ 9.)   The environmental investigation discovered the existence of

environmental contamination at the Property.  (*Id.*)  Pursuant to the Delphi Agreement, Delphi allegedly agreed to retain the liability for environmental contamination existing prior to the closing of the Property and take necessary steps to comply with its ISRA obligations, including paying for the environmental investigation and remediation.  (*Id.* at ¶ 10.)

Indeed, Plaintiffs allege that in June 2006, Delphi also entered into a Remediation Agreement with the New Jersey Department of Environmental Protection ("NJDEP"), pursuant to which Delphi agreed to be the responsible party for performing remediation of the Property.  (*Id.* at ¶¶ 10-12.)  Specifically, Plaintiffs allege that Delphi agreed to establish and maintain for the duration of the Remediation Agreement, a remediation funding source in an amount equal to an NJDEP-approved estimate of the remediation costs related to compliance with the Remediation Agreement.  (*Id.* at ¶ 13.)  Plaintiffs further allege that as part of the Agreement, Delphi agreed to increase the amount of money in the fund if the estimated remediation costs increased.  (*Id.* at ¶ 14.)  In accordance with its obligations, in September 2006, Delphi purportedly established a Remediation Trust Fund with an initial contribution of $535,000.  (*Id.* at ¶ 15.)

In January 2007, Johnson Controls[2] ceased operations at the Property.  (*Id.* at ¶ 16.)  Several years later, in June 2011, Plaintiffs allege that JCBGI entered into an Agreement of Purchase and Sale (the "DeNovo Agreement") for the conveyance of the Property to DeNovo Real Estate, LLC.[3] By deed dated August 2, 2011, title to the Property was transferred from JCBGI to DeNovo.  (*Id.* at ¶ 19.)  Pursuant to the DeNovo Agreement, Plaintiffs allege that DeNovo agreed to assume Delphi's obligations to the NJDEP under the Remediation Agreement.  (*Id.* at ¶ 20).  In addition,

---

[2]     At some point between May 2006 and June 2011, ownership of the Property was transferred from Johnson Controls to its affiliate, JCBGI.  (*Id.* at ¶ 17.)
[3]     The DeNovo Agreement was later assigned by DeNovo Real Estate, LLC to DeNovo. (Compl., at 18.)

Plaintiffs allege that DeNovo "agreed to purchase certain environmental liability insurance for the benefit of JCBGI." (*Id.* at ¶ 21.) In accordance with its obligation to procure insurance for the benefit of JCBGI, Plaintiffs also aver that DeNovo paid more than $250,000 to purchase an environmental insurance policy from Navigators (the "Navigators Policy"). (*Id.* at ¶ 22.)

The Navigators Policy, which was issued for a 10-year period, had a limit of $10,000,000 and named JCBGI as the Named Insured. (*Id.*) According to Plaintiffs, it was DeNovo's reasonable expectation that the Navigators Policy would provide a "safety net" source of funding for the Remediation Trust Fund in the event that it could not fulfill Delphi's obligations to the NJDEP under the Remediation Agreement. (*Id.* at ¶ 23.)

On or about December 2, 2011, DeNovo and Wick Companies, LLC ("Wick") formed a joint venture, 760 New Brunswick Limited Liability Company, for purposes of redeveloping the Site. (*Id.* at ¶ 24.) As its capital contribution to the joint venture, by deed dated December 16, 2011, DeNovo transferred title to the Property to 760 New Brunswick Limited Liability Company, but retained the liability for fulfilling Delphi's obligations to the NJDEP under the Remediation Agreement. (*Id.* at ¶ 25.)

On or about January 11, 2013, DeNovo and Delphi entered into a Liability Transfer Agreement (the "Liability Transfer Agreement"), whereby Plaintiff alleges that Delphi transferred to DeNovo, and DeNovo assumed from Delphi, all environmental liabilities with respect to the Property, including the obligations to the NJDEP pursuant to the Remediation Agreement. (*Id.* at ¶ 27.) At that same time, DeNovo, Delphi, and the NJDEP entered into an agreement that terminated the Remediation Trust Fund and replaced it with a new Fund, which had an initial balance of $1,825,000. (*Id.* at ¶ 29.)

According to Plaintiffs, in or around February 2016, DeNovo became insolvent and unable to provide additional funds to the Remediation Trust Fund, which at the time had a balance of $1,881,293.29.  (*Id.* at ¶ 33).  DeNovo further claims that it remains unable to provide additional funds to the replacement Remediation Trust Fund or perform further remedial work at the Site. (*Id.* at ¶ 35).  As a result, Plaintiffs allege that in June 2016, they "began their attempts to trigger the Navigators Policy for purposes of funding the Remediation Trust Fund . . . ." (*Id.* at ¶ 36). Specifically, the Complaint alleges that on June 3, 2016, Wick, as the property manager for the Property, submitted a Notice of Claim form to Navigators, along with a letter from DeNovo in which DeNovo expressed its "expectation that if DeNovo defaulted on its obligation to perform the environmental cleanup at the Site, JCBGI could trigger the policy to fund the cost to complete the remediation." (*Id.* at ¶¶ 37-38.)  According to Plaintiffs, Navigators rejected Wick's request because Wick was not a Named Insured under the Navigators Policy.  (*Id.* at ¶ 39).  The Complaint also alleges that JCBGI advised Wick and DeNovo that "the Navigator's Policy was intended solely for the benefit of JCBGI and that neither Wick nor DeNovo had any interest in the Navigators Policy." (*Id.* at ¶ 40).

According to Plaintiffs, although they disagreed with the positions of Navigators and JCBGI, they did not pursue coverage at the time because the NJDEP did not seek additional funding for the Remediation Trust Fund.  (*Id.* at ¶ 41).  However, approximately three years later, in July 2019, the NJDEP advised that the projected cost to remediate the Property had increased by $250,692.21, resulting in an alleged shortfall of that amount in the Remediation Trust Fund. (*Id.* at ¶¶ 42-43).  Thus, Plaintiffs allegedly requested that JCBGI and/or Navigators fund the shortfall. (*Id.* at ¶¶ 44, 46).  Neither JCBGI nor Navigators have agreed to do so.  (*Id.* at ¶ 58).

On April 13, 2020, Plaintiffs filed this action against JCBGI and Navigators in the Superior Court of New Jersey, Law Division, Middlesex County. The action was removed to this Court on May 13, 2020. Plaintiffs' Complaint alleges three causes of action against Navigators: declaratory relief (Count I), breach of contract (Count II) and breach of the duty of good faith and fair dealing (Count III). Through each of these causes of action, Plaintiffs seek a determination that, pursuant to the terms and conditions of the Navigators Policy, Navigators is obligated to deposit the purported shortfall into the Remediation Trust Fund. (*Id.* at ¶¶ 59-71). In addition, the Complaint alleges the following five causes of action against JCBGI: injunctive relief (Count IV), contribution pursuant to the Spill Act (Count V), negligence (Count VI), breach of contract (Count VII), and strict liability (Count VIII).

On June 30, 2020, Navigators and JCBGI filed the instant Motions to Dismiss.

## II.   **LEGAL STANDARD**

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] ... are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted).

Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

## III.   DISCUSSION

### A.  Navigators's Motion to Dismiss

In its Motion to Dismiss, Navigators argues that all claims asserted against it should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because: (1) Plaintiffs are not named insureds or other insureds under the Navigators Policy, and therefore, Plaintiffs have no rights under that policy, and (2) Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is duplicative of its breach of contract claim. (*See*, *e.g.*, Navigators Moving Br.)

### 1.  *Breach of Contract*

First, the Court notes that Navigators does not contest whether Plaintiffs have adequately pled the four elements required to assert a breach of contract claim.  *See Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007) (finding that a plaintiff must plead the existence of a contract between the parties, a breach of that contract, damages flowing therefrom, and that the party stating the claim performed its own contractual obligations).  It is further undisputed that neither Urban Renewal nor DeNovo are named insureds under the contract at issue—the Navigators Policy. Therefore, according to Navigators, the only right through which Plaintiffs may request coverage under the Navigators Policy is their status as intended third-party beneficiaries.  However, Navigators argues that Urban Renewal cannot possibly be considered a third-party beneficiary because it did not exist at the time the Policy was issued.  (Navigators Reply at 3.)  Specifically, the Navigators Policy was issued on August 5, 2011; however, according to Plaintiffs' Complaint, DeNovo and Wick formed 760 New Brunswick Limited Liability Company as a joint venture at least four months later in December 2011.  (*Id.*)  As for DeNovo, Navigators argues that DeNovo only paid the premium for the Navigators Policy because it was contractually obligated to do so as a condition of its purchase of the Property.  (*Id.* at 4.)  Therefore, the omission of DeNovo as a named insured under the Navigators Policy was "not an accident."  (*Id.* at 4-5.)  According to Navigators, the Navigators Policy was intended as a "safety net" in the event sufficient funds to remediate the Property were not available, and it claims that "safety net" was intended to protect JCBGI, not DeNovo.  (*Id.* at 5.)

In response, Plaintiffs argue that Urban Renewal and DeNovo have pled facts sufficient to establish that they were intended third-party beneficiaries of the Navigators Policy, thereby giving them the legal right to pursue this action against Navigators.  (Pl. Opp. at 15-16.)  In support of

this position, Plaintiffs highlight the allegations in the Complaint related to JCBGI's sale of the Property to DeNovo.  In that regard, Plaintiffs allege that DeNovo, as the buyer in the transaction, paid the total premium for the Navigators Policy.  According to Plaintiffs, this act evidences the parties' intent for DeNovo to be a third-party beneficiary.  Plaintiffs maintain that although neither DeNovo nor Urban Renewal were listed as named insureds under the Navigators Policy, the intent of the Navigators Policy is clear by the circumstances under which it was purchased.  Put simply, Plaintiffs claim that these precise circumstances are what the Navigators Policy was designed to do -- to fund DeNovo's alleged obligations to JCBGI in the event that DeNovo could not fund them itself.

For Plaintiffs to qualify as third-party beneficiaries under New Jersey law, they must show that the pertinent contract was "made for the benefit of [that] third party within the intent and contemplation of the contracting parties." *Grant v. Coca–Cola Bottling Co. of N.Y., Inc.*, 780 F.Supp. 246, 248 (D.N.J. 1991) (citing and quoting *First National State Bank of N.J. v. Commonwealth Federal Savings and Loan Assoc.*, 610 F.2d 164, 170 (3d Cir. 1980)).   To determine intent, courts "examine the terms of the agreement and the surrounding circumstances." *Grant*, 780 F.Supp. at 249.  Establishing status as a third party beneficiary requires a plaintiff to demonstrate that the contracting parties did more than act "against a backdrop of knowledge" that the plaintiff would benefit from the agreement.  *Corrugated Paper Prods., Inc. v. Longview Fibre Co.*, 868 F.2d 908, 912 (7th Cir.1989).  "The plaintiff must show that the benefit to plaintiff was a consequence which the parties affirmatively sought." *Id.*  Indeed, "[t]he contractual intent to recognize a right to performance in the third person is the key.  If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." *Broadway Maintenance Corp. v. Rutgers, State Univ.*, 90 N.J. 253, 259 (1982) (citing omitted).

Here, as a preliminary matter, the Court agrees with Navigators's argument related to Urban Renewal. The Navigators Policy was executed on August 5, 2011; however, the Complaint alleges that DeNovo and Wick did not form 760 New Brunswick Limited Liability Company until December 2011. (Compl., at ¶ 24).[4] Therefore, at the time the Navigators Policy was issued, Navigators and JCBGI could not possibly have intended that Urban Renewal – a non-existent entity – be an intended beneficiary of that policy. *See Ross v. Lowitz*, 222 N.J. 494, 513 (2015) (quoting *Borough of Brooklawn v. Brooklawn Hous. Corp.*, 124 N.J.L. 73, 76-77 (E. & A. 1940) ("[t]he determining factor as to the rights of a third party beneficiary is the intention of the parties who actually made the contract."). Thus, Urban Renewal's claim against Navigators for breach of contract is dismissed, and correspondingly its breach of the implied covenant of good faith and fair dealing is likewise dismissed.

As for DeNovo, however, I find that the Complaint provides sufficient factual allegations to survive a motion to dismiss. Although DeNovo did not point to any express provisions of the DeNovo Agreement or the Navigators Policy that signal the intent of Navigators and JCBGI to grant DeNovo status as an intended third-party beneficiary under the Navigators Policy,[5] the circumstances surrounding the execution of the Navigators Policy, including DeNovo's role in purchasing the premium, are probative. *See Consult Urban Renewal Dev. Corp. v. T.R. Arnold &*

---

[4]   As stated in the Factual Background and Procedural History, *supra*, 760 New Brunswick Limited Liability Company's changed its name to 760 New Brunswick Urban Renewal Limited Liability Company in April 2014. (Compl., at ¶ 30).

[5]   I note that on a motion to dismiss, a court generally does not consider documents extraneous to the pleadings, but may consider a "document integral to or explicitly relied upon in the complaint ... without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citation omitted). Here, the Navigators Policy and the DeNovo Agreement are integral to Plaintiffs' Complaint. Indeed, not only are these documents referenced throughout the Complaint, but Plaintiffs also cite to them in their opposition to the instant motions.

*Assoc., Inc.*, No. 06–1684, 2007 WL 1175742, at *2–3 (D.N.J. Apr. 19, 2007) (finding that while parties need not be named in a contract to be considered a third-party beneficiary, some evidence of intention must be manifested).  Indeed, the Complaint alleges that when DeNovo purchased the Property from JCBGI, DeNovo agreed to assume Delphi's obligations to the NJDEP under the Remediation Agreement and also agreed to purchase certain environmental liability insurance for the direct benefit of JCBGI.  (Compl., at ¶¶ 20-21.)  Moreover, the Complaint alleges that in connection with its agreement to purchase environmental liability insurance, DeNovo paid more than $250,000 to purchase the Navigators Policy.  (*Id.* at ¶ 22.)  Despite naming JCBGI as the named insured, DeNovo allegedly had the "reasonable expectation that the Navigators Policy would provide a 'safety net' source of funding for the Remediation Trust Fund in the event that it could not fulfil [Delphi's] obligations to the NJDEP under the Remediation Agreement."  (Compl., at ¶ 23.)  Based on these allegations, I find that the DeNovo adequately sets forth a breach of contract claim against Navigators as a third-party beneficiary, and that discovery is necessary to determine the parties' true intent surrounding the Navigators Policy.  *J.V. ex rel. Valdez v. Macy's, Inc.*, No. 13-5957 KSH CLW, 2014 WL 4896423, at *3 (D.N.J. Sept. 30, 2014) (denying motion to dismiss related to a plaintiff's breach of contract claim premised on third-party beneficiary liability because the record was undeveloped).  Accordingly, Navigators's instant motion to dismiss DeNovo's breach of contract claim, *i.e.*, Count Two, on privity grounds is denied.

*2.  Breach of the Implied Covenant of Good Faith and Fair Dealing*

Next, Navigators argues that even if the Court were to find that DeNovo has rights under the Navigators Policy as an intended third-party beneficiary, it cannot maintain a cause of action for breach of the implied covenant of good faith and fair dealing because that claim is duplicative of DeNovo's breach of contract claim.  I agree.

11

"Where a party has breached a specific term of a contract, that party cannot be found separately liable for breaching the implied covenant of good faith and fair dealing when the two asserted breaches basically rest on the same conduct." *Spellman v. Express Dynamics, LLC*, 150 F. Supp. 3d 378, 379 (D.N.J. 2015) (internal quotation marks omitted).  Thus, although Federal Rule of Civil Procedure 8(d) permits a party to plead multiple claims alternatively or hypothetically, "where it is undisputed that a valid and unrescinded contract governs the conduct at issue, breach of implied duty claims can be dismissed at the motion to dismiss stage." *Id.* at 390.

Here, DeNovo's claim against Navigators is clearly based on the Navigators Policy—a "valid and unrescinded contract."  Moreover, the Complaint does not even attempt to differentiate the allegations relating to the breach of contract claim asserted against Navigators and the allegations relating to the breach of the implied covenant of good faith and fair dealing.   Rather, the Complaint simply acknowledges that Navigators's "aforementioned actions and inactions" provide a basis for their breach of implied covenant claim in Count Three.  (Compl., at ¶¶ 69-70.) Presumably, those "actions and inactions" are the same ones that gave rise to DeNovo's breach of contract claim in Count Two.  *Cedar Holdings, LLC v. Menashe*, No. 16-7152, 2017 WL 1349321, at *3 (D.N.J. Apr. 7, 2017) ("A conclusory statement that a breach of contract is done in bad faith is insufficient to state a [separate] claim for breach of the implied covenant of good faith.").  Accordingly, this claim is duplicative of DeNovo's breach of contract claim, and therefore, it is dismissed.

### 3.  *Declaratory Relief*

Finally, Plaintiffs plead a separate count in their Complaint for declaratory relief against Navigators.[6]  (Compl., at ¶¶ 59-61.)  I note, however, that "courts in this circuit routinely dismiss stand-alone counts for declaratory and injunctive relief, since such claims are requests for remedies, and not independent causes of action." *ASAH v. N.J. Dep't of Educ.*, No. 16-3935, 2017 WL 2829648, at * 12 (D.N.J. June 20, 2017); *Chruby v. Kowaleski*, 534 Fed.Appx. 156, 160 n. 2 (3d Cir. 2013); *Kabbaj v. Google Inc.*, 592 Fed.Appx. 74, 75 n. 2 (3d Cir. 2015) (affirming dismissal of count for declaratory and injunctive relief, because "declaratory and injunctive relief are remedies rather than causes of action."); *see also Neuss v. Rubi Rose, LLC*, No. 16-2339, 2017 WL 2367056, at *9 (D.N.J. May 31, 2017) (dismissing separate counts as improper, since "injunctive and declaratory relief are remedies—not independent causes of action."); *Cole v. NIBCO, Inc.*, No. 13-7871, 2015 WL 2414740, at *15 (D.N.J. May 20, 2015) (holding that "declaratory relief and injunctive relief, as their names imply, are remedies, not causes of action."); *Lee Dodge, Inc. v. Kia Motors Am., Inc.*, No. 10-5939, 2011 WL 3859914, at *1 n.1 (D.N.J. Aug. 31, 2011) (dismissing counts for declaratory and injunctive relief because they "are not substantive claims but rather requests for remedies").  The Court, accordingly, dismisses Plaintiffs' separate count for declaratory relief against Navigators.

### B.  JCBGI's Motion to Dismiss

In its Motion to Dismiss, JCBGI argues that Plaintiffs' Complaint should be dismissed because its claims for contribution pursuant to the Spill Act, strict liability, negligence, and breach of contract fail to state a claim upon which relief can be granted.  In addition, JCBGI moves to

---

[6]     While Plaintiffs couch Count One as seeking "Declaratory Judgment" against Navigators, the Court will treat this cause of action as a form of declaratory relief because the Complaint does not purport to bring the claim under the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

dismiss Plaintiffs' claim for injunctive relief because it is not an independent cause of action.[7]  I will address each of these arguments, in turn.

### 1. *Spill Act Contribution*

First, JCBGI argues that Plaintiffs' contribution claim should be dismissed because Plaintiffs fail to allege that JCBGI discharged a hazardous substance or that it is somehow responsible for a hazardous substance that was discharged at the Property.  Specifically, JCBGI contends that a lone allegation that JCBGI was a "prior owner of the Property and that hazardous substances were discharged at the Property at some unspecified time," is insufficient to plead a claim for contribution under the Spill Act.  (JCBGI Moving Br. at 4-5.)  According to JCBGI, Plaintiffs' own allegations belie their position that JCBGI discharged a hazardous substance that caused Plaintiffs to incur response costs.  (*Id.* at 9.)  JCBGI argues that, according to the Complaint, Delphi, DeNovo's predecessor to the environmental liabilities at issue in this case, conducted an environmental investigation pursuant to ISRA and entered a Remediation Agreement with the NJDEP to perform remediation at the Property.  (*Id.*)  Therefore, JCBGI reasons that these remediation efforts addressed contamination that resulted from operations <u>preceding</u> the transfer of the Property to JCBGI.  (*Id.*) (citing Compl. ¶¶ 7, 9-11.)  In other words, JCBGI argues that Plaintiffs plead no facts showing the necessary nexus between any ownership, action, or omission by JCBGI, and the contamination that prompted remediation costs.

---

[7]     Based on the same reasoning set forth above with respect to Plaintiffs' claim against Navigators for declaratory relief, *supra*, I dismiss Plaintiffs' claim in Count Four of the Complaint for injunctive relief against JCBGI.

In response, Urban Renewal[8] argues that while the Complaint may not use the "magic words" that JCBGI seeks, it nonetheless alleges that JCBGI purchased the contaminated Property from Delphi in 2006, and continued Delphi's "historical battery manufacturing operations that caused the contamination currently being remediated." (Pl. Opp. at 17.)  As such, Urban Renewal contends that this allegation clearly suggests that JCBGI continued the chemical handling, waste disposal, and discharge practices that precipitated, and contributed to, the remediation of the Property. (*Id.*)  Because JCBGI continued the historical operations at the Property, Urban Renewal maintains that there is no way to differentiate the environmental contamination (and costs of investigating and remediating that contamination) that occurred before JCI acquired title to the Property from those that occurred after it acquired title.  (*Id.* at 17-18.)

Similar to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, the Spill Act provides a private cause of action for reimbursement of environmental remediation costs.  *See* N.J.S.A. 58:10–23.11g.  It provides that "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance, shall be strictly liable, jointly and severally, without regard to fault, for all cleanup and removal costs no matter by whom incurred."  *See* N.J.S.A. 58:10–23.11g(c).  The Spill Act provides, in pertinent part:

> dischargers or persons [who] clean[ ] up and remove[ ] a discharge of a hazardous substance ... shall have a right of contribution against all other dischargers and persons in any way responsible for a discharged hazardous substance or other persons who are liable for the cost of the cleanup and removal of that discharge of a hazardous substance.

---

[8]    DeNovo has agreed to voluntarily dismiss without prejudice its claims against JCBGI for contribution under the Spill Act, negligence, and strict liability.  Therefore, Urban Renewal is the only plaintiff asserting the claims set forth in Counts Five, Six, and Eight.  (Pl. Opp. at 16, 18.)

N.J.S.A. 58:10–23.11f(2)(a).  Therefore, "[t]o adequately plead a claim under the Spill Act, a plaintiff must allege that (1) a defendant was 'in any way responsible' for the discharge of a hazardous substance; and (2) that the plaintiff engaged in clean-up or removal of the hazardous substance." *Preferred Real Estate Invs., Inc. v. Edgewood Props., Inc.*, 2007 WL 81881, at *2 (D.N.J. Jan. 9, 2007).

Here, I find that the allegations set forth in the Complaint insufficiently plead a claim for contribution pursuant to the Spill Act.  First, Urban Renewal acknowledges that the only allegation which relates to JCBGI's alleged discharge of a hazardous substance at the Property, is that JCBGI continued the operational practices of its predecessor owners.  Specifically, the Complaint alleges that Delphi and its affiliates performed "battery manufacturing operations" at the Property, that JCBGI continued those operations when it assumed ownership of the Property, and that an environmental investigation discovered "the existence of environmental contamination." (Compl., at ¶¶ 5, 7, and 9.)  As such, Urban Renewal asks the Court to draw the inference that because JCBGI owned the Property for some isolated period of time and continued to manufacture batteries at the Property, it is responsible for the discharge of a hazardous substance which required remediation.  Indeed, Urban Renewal claims in its briefing that such an inference is reasonable because JCBGI engaged in the same "waste disposal practices" as previous owners.  (Pl. Opp. at 17.)  Notably, however, the Complaint never provides any factual allegations regarding those historical practices, nor does it allege that JCBGI actually discharged a hazardous substance.  *See White Oak Funding, Inc. v. Winning*, 341 N.J. Super. 294, 299 (App. Div. 2001) (citation omitted); s*ee also Montville Twp. v. Woodmont Builders, LLC*, No. Civ. 03-2680, 2005 WL 2000204, at *7 (D.N.J. Aug. 17, 2005) (dismissing contribution claim for failure to allege defendant caused hazardous material to enter water or land).  In fact, the Complaint does not even allege that the

Property's prior owners actually discharged hazardous substances.  Thus, the Court refuses to reach Urban Renewal's desired conclusion.  *See United States v. Manzo*, 182 F. Supp. 2d 385, 413 (D.N.J. 2000) (citing *N.J. Tpk. Auth. v. PPG Indus., Inc.*, 16 F.Supp.2d 460, 476 (D.N.J. 1998) ("The Spill Act is not so broad as to impose liability on a producer of a hazardous substance merely because it produced the hazardous substance.").

Moreover, to the extent that Urban Renewal argues that JCBGI should also be considered a "responsible" party for the discharge of hazardous substances at the Property, Urban Renewal's argument similarly fails.  As an alternative to being a direct discharger, a party may be liable under the Spill Act if it is "in any way responsible" for the discharge of a hazardous substance that caused contamination.  A person is "in any way responsible" for a discharge if they had "control over the hazardous substance that caused the contamination." *N.J. Sch. Dev. Auth. v. Marcantuone*, 428 N.J. Super. 546, 559 (App. Div. 2012) (citation omitted).  Here, this argument fails for the same reasons as above—namely, the Complaint does not contain any allegations that JCBGI had control over a hazardous substance.  The Complaint's threadbare allegation that JCBGI manufactured batteries at the Property, without more, is insufficient.  Accordingly, Urban Renewal's contribution claim under the Spill Act is dismissed without prejudice.

## 2.  *Strict Liability and Negligence*

With respect to Urban Renewal's claims for negligence and strict liability, JCBGI similarly argues that the Complaint lacks factual allegations to support such claims.  Specifically, in connection with the negligence claim, JCBGI argues that the Complaint fails to allege that JCBGI owed Urban Renewal any duty, and similarly fails to allege any conduct that would have constituted a breach of that unspecified duty.  (JCBGI Moving Br. at 13-14.)  As for the strict liability claim, JCBGI argues that Urban Renewal has not alleged that JCBGI participated in any

"abnormally dangerous activity at the Property," which it argues is required under New Jersey law to sustain a strict liability claim.  (*Id.* at 14-15.)  In its opposition, Urban Renewal only argues that the Complaint "pleads the elements necessary to sustain such a cause of action (i.e. the "abnormally dangerous" activity of manufacturing batteries)," and that its negligence claim is a "common law counterpart to the statutory claim under the Spill Act resulting from JCBGI's negligent chemical handling and waste disposal practices."  (Pl. Opp. at 17-18.)

First, to prevail on a claim for strict liability, two elements must be demonstrated: (1) that the defendant's disposal of waste constituted an "abnormally dangerous activity," and (2) that such activity has harmed the plaintiff.  *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 263 F. Supp. 2d 796, 850 (D.N.J. 2003), *aff'd*, 399 F.3d 248 (3d Cir. 2005) (citations omitted).  To determine whether an activity is abnormally dangerous, and therefore subject to strict liability, New Jersey has adopted the factors set forth in the Restatement of Torts:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977) (cited in *T & E Indus., Inc. v. Safety Light Corp.*, 123 N.J. 371 (1991)).  "Under Restatement analysis, whether an activity is abnormally dangerous is to be determined on a case-by-case basis, taking all relevant circumstances into consideration." *State, Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473 (1983).  "Applying the Restatement multi-faceted test, courts agree that the question of whether a specific activity is abnormally dangerous

18

and, thus, gives rise to strict tort liability, is a question of law for the court to resolve." *Senisch v. Tractor Supply Co.*, No. 16-47, 2018 WL 324717, at *10 (D.N.J. Jan. 8, 2018), appeal dismissed, No. 18-1265, 2018 WL 3933746 (3d Cir. Apr. 23, 2018).

Typically, "application of these [Restatement] factors will commonly present a set of factual issues not easily resolved on a motion to dismiss." *Pub. Serv. Elec. & Gas Co. v. Newport Assocs. Dev. Co.*, 365 F. Supp. 3d 506, 521 (D.N.J. 2019); *New Jersey Transit Corp. v. Am. Premier Underwriters, Inc.*, No. 04-6423, 2005 WL 8175133, at *9 (D.N.J. Nov. 23, 2005) (denying motion to dismiss without prejudice on strict liability claim based on insufficient record). Furthermore, Urban Renewal's claim, here, suffers from the same fundamental flaw as its Spill Act contribution claim—the Complaint fails to allege that JCBGI disposed or discharged waste at the Property during its period of ownership. Accordingly, because the Complaint alleges merely that JCBGI manufactured batteries at the Property, Urban Renewal's claim for strict liability in Count Eight is dismissed without prejudice.

As for Urban Renewal's negligence claim against JCBGI, I also find that the factual allegations in the Complaint are insufficient to adequately plead a cause of action. Despite Urban Renewal's contention that its negligence claim is simply a "common law counterpart" to its statutory claim under the Spill Act, I find that the claim must still satisfy certain pleading requirements. Under New Jersey law, to bring a negligence claim, a plaintiff must plead the following four elements: (1) duty of care, (2) breach, (3) proximate cause, and (4) actual damages. *Polzo v. Cty. of Essex*, 196 N.J. 569, 960 A.2d 375, 384 (2008). Here, the Complaint does not even attempt to plead a duty of care on the part of JCBGI. Rather, Plaintiffs merely allege that the contamination of the Property was a result of the negligent acts or omissions of JCBGI "in derogation of their duty to plaintiffs to prevent such contamination," and that as a direct, proximate

and foreseeable result of those acts or omissions, Plaintiffs incurred "investigation, delineation, cleanup and removal costs, consulting fees, [and] legal fees." (Compl., at ¶¶ 84-85.)  Such vague and conclusory allegations do not pass muster under Rule 12(b)(6), and therefore, Count Six is dismissed without prejudice.

### 3.  *Breach of Contract*

JCBGI also moves to dismiss Count Seven of the Complaint, which asserts a claim for breach of contract.  JCBGI argues that Plaintiffs' breach of contract claim fails for the following three reasons: (1) DeNovo is contractually precluded from asserting a breach of contract claim against JCBGI relating to remediation obligations at the Property, (2) JCBGI is under no obligation to take any further action relating to the Property under the plain terms of the DeNovo Agreement, and (3) Plaintiffs allege no injuries as a result of the alleged breach of contract.  (JCBGI Moving Br. at 15.)  In their opposition, it appears Plaintiffs have abandoned their breach of contract claim in Count Seven to the extent it relies on allegations relating to remediation obligations at the Property.  Therefore, according to Plaintiffs, the "linchpin" of their claim in Count Seven is JCBGI's failure "to assert a claim against Navigators under the Navigators Policy for the deposit of the Shortfall into the Remediation Trust Fund as requested by the NJDEP." (Pl. Opp. at 19).  Specifically, Plaintiffs argue that a factual basis for this claim exists "based upon the unique nature of the circumstances" surrounding the DeNovo Agreement.  (*Id.* at 20.)  According to Plaintiffs, DeNovo was paid to take title to the contaminated Property and release/indemnify JCBGI from certain environmental claims.  (*Id.* at 21.)  Plaintiffs allege that the Navigators Policy was purchased by DeNovo to provide a "safety net" in the event that DeNovo could not fulfill its obligations to JCBGI under the DeNovo Agreement, and they emphasize in their opposition that paragraph 6.4(f) of the DeNovo Agreement specifically contemplates that "DeNovo's

indemnification obligation to JCBGI shall be funded to the extent of coverage afforded by the Navigators Policy." (*Id.* at 21) (citing Declaration of Roy D. Prather III, Esq. in Support of JCBGI's Motion to Dismiss ("Prather Decl."), Ex. A at ¶ 6.4(f)).

To state a claim for breach of contract under New Jersey law, a plaintiff must allege: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007).  The existence of a valid contact between the parties is an essential element of a breach of contract claim.  *See Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013).

Here, as a preliminary matter, the Complaint does not allege a valid contract existed between JCBGI and Urban Renewal, and therefore, any claim asserted on behalf of Urban Renewal for breach of contract against JCBGI is dismissed.

As to DeNovo's claim for breach of contract against JCBGI, I find that the release provision contained in the DeNovo Agreement warrants dismissal.  In construing contracts, the Supreme Court of New Jersey has consistently instructed that "clear and unambiguous" contracts leave "'no room for interpretation or construction'" and must be enforced "'as written.'"  *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citations omitted) (discussing New Jersey contract law).  Here, the DeNovo Agreement provides, in relevant part, that:

> [DeNovo and the Releasors] hereby fully and irrevocably waive, and release JCBGI Group from, any and all demands, claims or causes of action that any Releasor may now have or hereafter acquire against JCBGI Group for any Losses of which each [DeNovo or any] Releasor is presently unaware or which Releasor does not presently suspect to exist in its favor which, if known by Releasor or Releasors, would materially affect such Releasor's release of JCBGI Group.

21

(Prather Decl., Ex. A, at § 6.3(b)).  Indeed, the term "Losses" is broadly defined by the DeNovo Agreement as "any demands, damages, costs, claims, expenses…or liabilities of any kind, whether known or unknown…which have ever arisen from…or may ever arise from any Release or threat of Release of any Hazardous Materials at or from the Property…"  *Id.* at 6.1(o).  Plaintiffs' opposition is also telling.  Rather than refute the express language of the DeNovo Agreement, and specifically its release provision, Plaintiffs argue that the factual basis for this claim is clear given the "unique nature of the circumstances surrounding the transaction that resulted in the DeNovo Agreement."  Express contractual provisions, however, "must be given effect without reference to matters outside the contract." *Bohler–Uddeholm, Inc. v. Ellwood Grp.*, 247 F.3d 79, 93 (3d Cir. 2001) (internal quotations and citations omitted).

Nevertheless, I note that a narrow exception arises if a contract resulted from fraud, duress, and/or misrepresentation.  *See S.A. Citrique Belge N.V. v. Northeast Chems., Inc.*, No. 12–5408, 2013 WL 3223389, at *2 (D.N.J. June 25, 2013) (citing *Van Houten Serv., Inc. v. Shell Oil Co.*, 417 F.Supp. 523, 527 (D.N.J.1975)).  Indeed, under such circumstances, even the clearest of contracts may prove voidable and rescindable.  *See Windsor Card Shops, Inc. v. Hallmark Cards, Inc.*, 957 F.Supp. 562, 568 n. 8 (D.N.J.1997) (citation omitted) (noting that a misrepresentation may render a contract voidable); *see also First Am. Title Ins. Co. v. Lawson*, 177 N.J. 125, 827 A.2d 230, 237 (2003) (citation omitted) (noting that "equitable fraud provides a basis for a party to rescind a contract").  In the absence of some mistake, fraud, duress, or other "imposition," however, parties will be bound by the clear and unambiguous terms of their agreements. *Weisman*, 982 F.Supp.2d at 395.  Here, the Complaint is devoid of any allegations that mistake, fraud, or duress played a role in DeNovo's execution of the DeNovo Agreement.  Accordingly, the release

provision must be enforced, and therefore, DeNovo's breach of contract claim as to JCBGI is dismissed.

## IV.    <u>**CONCLUSION**</u>

For the reasons set forth above, Navigators's motion is **GRANTED** in part and **DENIED** in part as follows: Navigators's motion is **GRANTED** with respect to Urban Renewal's breach of contract claim (Count II), Plaintiffs' breach of the implied covenant of good faith and fair dealing claim (Count III), and Plaintiffs' request for declaratory relief (Count I).   These claims are dismissed with prejudice.   However, Navigators's motion is **DENIED** as to DeNovo's breach of contract claim (Count II).   JCBGI's motion is **GRANTED** with respect to Plaintiffs' claims for injunctive relief (Count IV), contribution pursuant to the Spill Act (Count V), negligence (Count VI), breach of contract (Count VII), and strict liability (Count VIII).   Plaintiffs are given leave to amend their Spill Act contribution, negligence, and strict liability claims within 30 days from the date of this Opinion.

Dated: January 28, 2021                                   /s/ Freda L. Wolfson
                                                          Freda L. Wolfson
                                                          U.S. Chief District Judge